Mr. Mulcahy, for the appellant, you may proceed. Good morning. Good morning, Your Honors. May it please the Court, my name is Kevin Mulcahy. I represent the United States in this matter. I would request five minutes of rebuttal time, if I could. All right. Your Honors, the one-day sentence for the child pornography crime, in this case, against these facts, was unreasonable. This Court held as much once, sent the case back for resentencing. On remand, the District Court made almost the identical errors, and again imposed a one-day sentence that remains unreasonable. In the original decision... Do you request that if we agreed with you and remanded for resentencing, that the resentencing be done by a different judge? We did not make that request, Your Honor. Do you make it now? I do not have authority to make that request, so no. Your Honor, our position has been that we leave it to the Court's discretion in its supervisory role. Okay, what are the standards that we would evaluate on that? Your Honor, the standards would include, I believe from the Bisline case, whether or not the District Court would be likely to essentially adhere to the remand a second time, or actually even the first time, I suppose. Okay, even though you don't have authority to make the request, I mean, I would really like some argument on it. I mean, you're not prepared to do it, but that's my main issue in this case. I mean, I think clearly the sentence here is controlled by the first opinion of our court. The first opinion we held that this sentence was substantively unreasonable. On remand, the District Judge imposed the same thing. He gave a little more supervised release than the first time, and he tweaked that a little bit, but it was still one day of incarceration with time served, basically ignoring the Court of Appeals, thumbing his nose at us, I'm afraid. But, I mean, if you're prepared at all to talk about what the standards are, I mean, that's kind of what I'm focused on right now. I understand, Your Honor. And maybe my colleagues are different, I mean, so there may be some other issues you want to talk about. Well, you're familiar with the Bisline case, and that issue that Judge Griffin is referring to is ventilated in that case to the extent you want to opine on it. Yes, Your Honor, may I just grab it off my table? I want to make sure that I adhere to my boss's direction. You're not taking a position, but you're telling us what the law is. You're going to educate me as to what I look for. If I were to contemplate the question sui sponte, whether this case warrants a remand before a different judge, what do I look at? Yes, Your Honor, the principal issue to look at would be whether or not the original judge in this case, whether the original judge or the sentencing judge would reasonably be expected to have a substantial difficulty in putting out of his mind previously expressed views or findings. I think that's the overarching theme from Bisline and the other cases. Okay, what here would go one way or the other on that? Well, factually here, the district court was focused in what our contention in regard to the error in the sentencing, the district court was focused on Mr. Robinson's personal characteristics. And one of the statements that was made in the record at the sentencing hearing was that the district court said, I'm not going to send someone to prison who has mental health problems unless I have a compelling, I believe, or good reason to do so, something in that regard. And he said that he wasn't even close to making that finding. I think that's probably the principal fact that would respond to this argument. I guess also with regard to this defendant, the district court was focused substantially on, like I said, the mental health issues, including past suicide attempts by this defendant. And the district court did share a story about how another defendant in front of the court had killed himself on pretrial release before a case. And so I think those two facts may go to... These were alleged suicide attempts after he was charged with the crime, as I understand it. That's correct, Your Honor. He was charged with the crime in 2008, 2009 was his sentence, and then the suicide attempts were all in 2011. I mean, the principal fact, I think, and the number one fact that would go to Your Honor's question is that the district court said, in refusing to impose a term of home confinement as part of the sentence here, which would have tracked what the district court attempted to do in Bisline in both cases, excuse me, in the initial sentence and in the re-sentence, the district court said that he wasn't going to pander to the Sixth Circuit by imposing the defense request. The word, too, was it pandered? Pander was the word, yes, Your Honor. And I think those are the... Taking into account the lack of response by the district court to the questions that the Sixth Circuit raised in Robinson 1, the lack of response, coupled with some of the statements in the sentencing transcript, would be, I think, the most responsive to your question, Your Honor. And I guess I'll build on top of that and just note that for the... As to the sentence itself, this court's principal criticisms were three. That the sentence imposed did not adequately reflect the seriousness of the offense, meaningfully deter others, and avoid sentencing disparities. And here, in response on remand, the district court, as to the seriousness of the offense, didn't respond or indicate how the sentence that he was going to then re-impose would address the four facts that this court was focused on with the seriousness of the offense. In other words, Mr. Robinson's conduct had four very significant facts that this court focused on in the first opinion. Those were that he paid money into the marketplace of child pornography. He didn't obtain these, say, through an email exchange or download them from a free website, but rather paid money, and he did so three times. The number of images in this case was 7,100, which was a significant amount. The content of those images, which the Sixth Circuit's original opinion included terms like bondage, torture, and rape of prepubescent children, and the amount of time that the defendant spent amassing his collection. In this case, it was five years. So against those four facts, I think the Court of Appeals said these are the four facts that underscore the seriousness of this offense. On remand, the response was silence on those. The district court never went through an analysis on those four facts. Similarly, on the general deterrence argument, this court described general deterrence in cases like this as crucial and as focused on the marketplace, and then criticized the district court because the district court, in the initial sentencing, was focused on sex offender registry, having to do terms of supervised release, being labeled a felon. These were somehow deterrent. And this court criticized that and said those are consequences of arrest and prosecution and conviction, not of the sentence. So on remand, in response to that direction, the district court essentially mocked the notion of general deterrence. As to general deterrence, he said, I look around, I see no media here, so there'll be no publicity, and oh, by the way, you weren't deterred from all the other cases that we've had. In addition to that, in the written sentencing opinion that followed the hearing, the district court again focused on collateral consequences of a conviction, sex offender registry, and limitations on where a person can live who is a registered sex offender as deterrent factors. But again, that ignored the direction and criticism in Robinson 1. And the last issue about avoiding sentencing disparities, again, this was perhaps the most robust portion of Robinson 1, and there the court said, we understand that the sentencing guidelines for child pornography offenses are under attack and are being subject to revision. But there are two factors in the sentencing enhancements here, the fact that there were images of children under 12 and that there were sadomasochistic and violent images that aren't really under attack and that aren't subject to as much scrutiny. The opinion also focused on two aggravating factors, again, paying money into the marketplace  In response, again, the district court said nothing about the enhancements, said nothing about those aggravating factors. Instead, the district court criticized, I guess is the fairest word, the government for its failure to appeal other one-day sentences and, again, avoided the issue of national disparity, which is really what this is about. So the same arguments that were made before, the direction given by this court was ignored on remand and the same unreasonable sentence was reimposed. What do you say a reasonable sentence would be here? Well, our recommendation was 36 months, so I certainly believe that would have been a reasonable sentence. Guidelines are greater than that, right? They are, Your Honor. 38 months? Yes, Your Honor. The guidelines in the case are 78 to 97 months and we recognize that we made a recommendation below guidelines here. I think that takes into account some of the criticisms that I've talked about earlier. The Sentencing Commission just issued a lengthy analysis of the guidelines. The Department of Justice has responded and agreed there should be some revisions. So we did recommend a below guidelines sentence here. The bottom line, though, of all of this is simply this. It's not that whether or not this case could or should have been given a departure or variance from the guidelines. It's that this should not be a non-custodial sentence. The facts in this case are severe. They're worse than the facts in Bisline. The sentence that was imposed and found unreasonable in Bisline was more severe than this case both times, and we'd ask that it be remanded for another sentence. Thank you. Thank you. Good morning, Your Honors. Kimberly Stout on behalf of Mr. Robinson. I see I'm in a difficult position here, but I love a challenge. I'm only one of three, too, by the way. And I understand that and respect what your opinion and beliefs are, Judge Griffin. This is your last chance to convince me otherwise. All right. Bisline. You have a good shot here, and I haven't made a decision. Thank you. My colleagues haven't made a decision. Thank you very much, Judge. I appreciate that. That's why I like arguing here instead of some other court of appeals, which I won't mention. Bisline's very different. The judge there was very concerned about his poor physical health and his age and how age played a part into deterrence. The judge was also very concerned about policy considerations of the sentencing guidelines. That is not the case here. Judge Tarnow, who we're speaking about, who allegedly – truthfully, the disrespect I see here is what I've seen from the government's table in addressing Judge Tarnow. Judge Tarnow is considered a more liberal judge in our district, and I think that he has a dry sense of humor that's often very misinterpreted. He did not pander to the Sixth Circuit, and I think he misspoke when he said that word because I was a little surprised, as probably everybody was, when they heard that in the courtroom. But what he did was admit that he did not consider some of the factors and put it on the record how he now felt at this next sentencing, which let's remember how many years have passed, and let's not blame adjournments on counsel. These were all adjournments that were agreed to. These were adjournments that were necessary to go to the United States Supreme Court on an incredibly important issue and to have my client evaluated again, which she was. What we're here to consider is what you said, your court said, in United States v. Fanazzi, 515 Fed 3rd, 511, and we're not here to substitute our judgment for Judge Tarnow's. We're here to consider whether this is a reasonable sentence with an abuse of discretion standard and consider what this court directed Judge Tarnow to do. Well, this court specifically said in Robinson 1 opinion that there could be extraordinary circumstances that justify extraordinary variances. That was, I think, at page 780, and I'm sorry if I'm wrong. I'm pretty tired today, and thank you for allowing me to be late. The extraordinary circumstances here and what Judge Tarnow put on the record were maybe not as artful as could have been put, and I'm sure I'm not very artful today because I'm tired, but was post-conviction rehabilitation. It's been 6 years and 4 months since the complaint was filed, and it's been 5 years and 4 months since the first sentence. This client has had no violations of the law. This client had significant mental health disabilities that were documented by a doctor who specializes in the area of sex offenses with a Ph.D. that was not challenged ever by the government or disagreed with or probation or pretrial or anybody. This man tried to kill himself 3 times and was hospitalized since sentencing. He's become homeless, lost his car, his apartment, and has become a family pariah. Since the arrest, though, and the sentencing, he's been blessed because the court has paid for, our taxpayers have paid for mental health treatment, which he seriously needed. He has schizoaffective disorder, which was diagnosed and unchallenged by the government. He has OCD, which was unchallenged by the government, and serious depression, which was unchallenged by the government. Why is the taxpayer paying for that? He's not incarcerated currently, is he? As part of supervised release, the courts often pay for treatments based on the ability of the client to pay. Mr. Robinson was a working man but no longer works because of this and also because he got in a serious job accident and is now on disability. Also, because of the way he was raised, Your Honor, he wasn't as fortunate as some other defendants to get mental health treatment as he desperately needed when he was growing up. The judge even attached pictures of Mr. Robinson because he wanted this court to see what he quote-unquote found as a profound change in Mr. Robinson since the plea hearing and the first sentence. A profound change is what he said. There has been something extraordinary that occurred, and the United States Supreme Court in Pepper v. United States 131 Supreme Court 1229-2011 has said post-conviction rehabilitation may support a downward variance. That's not a question at issue at all. So he did find something. Further, he talked about Attorney General Holder's memo, which was dated August 12, 2013, and directed to all the United States attorneys and attorney generals in the country, in the criminal division, and asked them to use more discretion in mandatory minimum drug cases. Why? Because our prisons are busting at the seams, especially with minorities. But the U.S. agreed to have a reduced sentence below the guidelines, right? I'm sorry, Your Honor? Didn't the United States attorney agree to a reduced sentence under the guidelines? At least that's what I thought I heard here. Your Honor, to be honest with you, there was no rule of plea agreement here. I did not enter one with the government. I wanted to do this without any... Anything that they state was just a recommendation by them. I had no agreement with them. I know that. I'm just saying that since the attorney general said you can be lenient with them, they cut it by half from the guidelines, is what they said, right? This was before this memo. What they decided, what they recommended, was before Holder told us, we've got to make some changes in our criminal justice system on mandatory... They were doing it in advance then. Yes, they asked for three years. That's correct. Has the attorney general indicated a policy to have reduced sentence guidelines on child pornography? You talked about drug offenses. Your Honor, you're absolutely right. Is he involved with reducing child pornography offenses? I didn't think so. Your Honor, you're absolutely right. This is a hot-button issue. This isn't drugs. I mean, it creates hysteria. But what he directed to was something akin because there was a... Akin? Yeah, crack. I think they're quite different. Well, crack, Your Honor. Possession of crack cocaine and possession of child pornography? There's no question child pornography is a heinous, disgusting... People that produce it. I'm a mother. I'm a grandmother. I'm a step-great-grandmother. You're absolutely right. The people that possess it are the customers for the people that produce it and victimize these children. And if there weren't the customers out there buying this vile stuff, they wouldn't be the production. That's what our cases talk about, how we have to crack down on people's possessions because they're creating more of a market for it. But we've learned through crack and other things it doesn't change the number of users. We've learned that with Holder's memo, it was addressed to crack and the hysteria for that. I don't think there's been a policy shift as to child pornography anyway. I agree with you there's been a policy shift as to crack cocaine, but I haven't seen it yet for child pornography. And sadly, child porn, like drugs, has existed as long as time, and I don't think we're going to get the people in Russia and Ukraine who are creating these videos because sadly I've had to watch some of them as part of my job, and I regret it, but I have to. Maybe we can cut to the issues here. One of the factors that the sentencing court must consider is general deterrence. And on re-sentencing, the district judge makes some sort of a comment, I don't see what general deterrence is going to be affected here because there's nobody from the press here to see it. Is that how he dealt with the issue of general deterrence here? I don't believe so. Is that basically how he dealt with it? No, I don't believe so, Your Honor. All right, tell me how he dealt with it. How he dealt with it was, that was, again, his dry sense of humor, and maybe inappropriate. He said something to that effect, and I certainly agree with you. But nonetheless, he also increased supervised release by five years, continued and increased... Did he say that's for general deterrence purposes? We ask him to consider the following factors, including general deterrence. What rulings did he say on remand, specifically, that dealt with general deterrence, other than, I don't see any media here, so I can't see how this sentence is going to affect deterrence in general? I'm trying to find... Any other ruling that he specifically said? I'm trying to find the page number, Your Honor, because he specifically said, I am restricting this gentleman's freedom, excuse me, further, with more conditions and a longer supervisory period. That is what he said when he addressed it. He did. And he went into something that I think is important here, and stop me if you have further questions, of course, Your Honor, but even though general deterrence is important, and that's why he increased the supervised release and the conditions, which include polygraphing, and who he can associate with, and approval of who he associates with, and treatment and medications, et cetera. But he also said, as this Court said in United States v. Presley, 547 Fed 3rd 625, that in affirming the Sixth Circuit held that a district judge may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence, even though disparity is usually concerned with national disparities. So it is recognized by this Court as well as others, as I know you are aware. And let's move to that Dubin case. Dubin case is important here. Because the government wrote in their sentencing memorandum that a sentence of one day does not reflect seriousness. However, in this exceptional case, a noncustodial sentence will be effective in Dubin. Well, Dubin had Asperger's syndrome. It says here that in their brief, the defendant suffered lifelong debilitating form of Asperger's and severe social deficits. Well, Mr. Robinson has schizoid affective disorder, unchallenged again, and found by doctors and treated now. OCD and depression. Mr. Dubin was from a family that was wealthy, where a father who was an evidence professor in our local area at a law school, I actually had his class, was able to treat his son his whole life. Yet he still collected child porn. It was supposedly supervised by his parents. My client, in contrast, was raised by a single mom in Baltimore with very limited education, with very limited means, and she was a member of a very strict religious group, which caused him not to be able to attend dances. Talk about social... Do you have a professional psychiatric opinion that links your client's psychiatric condition to his affinity for child porn? I mean, is there any opinion about causation? How is this psychiatric condition related in terms of causation? Do you have any professional opinion on that? Yes, Dr. Dennis Sugrue's report was filed under seal. There's two of them that Your Honor should have access to with his resume, or CV, I should say. And he talks about the reasons that led him to this. He talks about the OCD and the collections. And as you should know, or you probably do know, when he was arrested, he's the one who went, he let the ICE officers in, welcomed them, showed them the computers, no search warrant, and then went and got his CDs and gave them to them, gave them, turned them in. You're kind of straying away from my question, though. Maybe you don't really have anything to say about that. Well, I do know. It's in the opinion, and what it talks about is that this gentleman was intentionally trying to act out from his upbringing, intentionally in doing things that were considered inappropriate on purpose because of the religious background and the restrictions that he grew up with and the problems that he was having. So he did connect it and find a cause, and he did diagnose problems that need to be treated and medicated. I don't see what this association is from a causation standpoint based on what you just said. Well, again, I'm a lawyer. But that's fine. You're not a medical person. Right, and I asked him to do that. That's certainly what we all think about, and I asked him to do that and consider all that and put it in his report. He also made the findings that he is a well-adjusted male who likes adult women, not children, and I find that somewhat significant. I know the government doesn't find it as significant. But all in all, I do believe that the lower court addressed this line, this line. It addressed the seriousness of the offense and increased treatment, increased polygraphing, increased supervision, distinguished stall and pristle, and also it addressed this disparity, which was important here because there's several cases this court listed that weren't appealed, that were given probation for child born in our district, and there's no rhyme or reason. And I just think there has to be an appearance of justice here, and there isn't. And it breaks my heart. Thank you. Before you leave, Ms. Stout, first of all, I'd like the panel, I'm sure, agrees with me, to thank you for taking this case under the Criminal Justice Act and well representing your client. My final question is, were you to lose and were we to reverse and remand for resentencing, could you address whether the resentencing should be by a different judge or not? You know, again, I think that the reason in Bristline, and I could be wrong, but it was more that the judge in that district disagreed with policy, and there's an issue now of whether you're permitted to disagree with policy of the Sentencing Commission and formulate your sentence from there. This judge did not do that. He looked to the factors you asked him to consider and spoke to him, perhaps said some things that weren't funny that he thought were funny because that's Judge Tarnow. But he did look at your factors, so I think he would be considerate of any follow-up to that. And that's a big difference. And he did say, I erred, specifically, in his opinion. I erred and I didn't consider the factors you listed, the seriousness and just punishment, the disparity and the deterrence, and this is how I'm going to address it. Not, I'm thumbing my nose at you and there's no policy. That's not what he did, and that's why he put the pictures in there. That's why he wrote an opinion after the sentence to really define it because he wasn't as clear as he perhaps should have been. And I hope he doesn't listen to this. Thank you very much. Thank you. By way of rebuttal, I think I'll start first by answering Your Honor's question regarding whether or not there's a conclusion from, I guess, a medical doctor, the evaluation about whether or not this defendant's mental health issue somehow related to the crime he committed. The answer from Dr. Segru in his initial, and Ms. Stout did touch on this in his initial review of the defendant, was that the defendant's explanation was he wanted to shake his image of being a good boy. And to do that, apparently, this was the crime he chose, to shake that image. And the doctor indicated that that might seem unbelievable to some and then went on and explained a little bit more about the defendant. But I don't think anyone has any ability, the doctor or otherwise, to say this particular defendant's depression caused him to collect child pornography. There's no finding quite like that. As to the Smart on Crime initiative, I'm not going to spend much time on that, but obviously it has nothing to do with child pornography. And frankly, and again, I won't spend much time, but the idea of comparing the child pornography epidemic that's going on now with the crack issues, those two things cannot possibly be compared. Crack is something that gets ingested and then it's gone. The images of these children stay forever. And there's actually, and it's unfortunately not in my brief, but there's a Fifth Circuit case called United States v. Miller. And what the Fifth Circuit said there, and the site is 665F3114. It's from 2011. And what it said was if a handful of pornographic images taken 20 years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. And that's exactly right. These two things couldn't possibly be more different. And also this Court has already indicated that whatever Attorney General Holder said about Smart on Crime doesn't inure benefits to any criminal defendant. That case is called Nagy, but that's cited in our brief. I guess the last thing that I think is worthwhile is when talking about the post-conviction rehabilitation, and the district judge did spend time on that, we have no quarrel with the idea of what Pepper says, which is the Court can consider that. That, of course, is true, and there's no doubt about that. Our position, though, is that with the district court's analysis of that was frankly hollow. There was very little to support the idea of post-conviction rehabilitation. Yes, Mr. Robinson had attempted suicide, but not before or at the time of his arrest. It was in 2011, two years after the sentence, while this case was pending for the first time in front of the Court of Appeals. That issue was addressed by Dr. Segru in his follow-up report, and what he indicated was that the suicide attempts by Robinson were brought about because he was distraught over his unemployment, poverty, homelessness, lack of transportation, family rejection, and isolation. This is a man who certainly has some mental health issues, certainly has some depression issues, and the district court even found at the time of this resentencing that he apparently had overcome those. He now has stable housing. He doesn't have these same suicidal thoughts anymore, but the idea that he dipped in a mental health standpoint in the interim and came back up is the same thing as having a particular criminal disposition and then being rehabilitated. I don't think those two are the same things. Also, the district court found that Mr. Robinson was exceptional because he had, quote, survived this long and had not committed any new crimes. But not committing new crimes, not violating the terms of supervised release, these are just the minimum we should expect from folks that are unsupervised released. The district court found that these things were exceptional and extraordinary, and we disagree. We don't think that there's been post-conviction rehabilitation to the extent that justifies the variance here. Thank you. Thank you very much. Cases submitted. The last case being on the briefs.